UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------X
JONATHAN CARNEY,
        *Plaintiff*,

v.

ANGEL QUIROS, Commissioner of the
Connecticut Department of Correction;
**CONNECTICUT DEPARTMENT OF
CORRECTION; DR. JANE PIERI;**
Psychologist; **COLLEEN GALLAGER**,
Correctional Health Service Program Director;
**JANE WALSH**, ADA Coordinator;
in their Individual and Official capacities,
        *Defendants.*[1]
------------------------------------------------------------X

**COMPLAINT**
Civil Action No.

**JURY TRIAL REQUESTED**

## I. JURISDICTION & VENUE

1. This is a civil action authorized by **42 U.S.C. § 1983**, and the **Americans with Disabilities Act, 42 U.S.C. §12101 et. seq., 12132-33**, and *Section 504 of the Rehabilitation Act of 1973*, to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States and Federal Statutes. The Court has jurisdiction under **28 U.S.C. § 1331 and 1343(a)(3)**. The Plaintiff seeks compensatory, declaratory, and preliminary injunctive relief pursuant to **28 U.S.C. § 2201 and 2202**.

2. The United States District Court of Connecticut is an appropriate venue under **28 U.S.C. § 1391(b)(2)** because it is where the events giving rise to this complaint occurred.

---

[1] All Defendants identified as "John" as their first name and/or "Doe" as their last name, is a result of the Plaintiff not knowing the first or last names of the Defendants.

## II. PLAINTIFF

3. The Plaintiff, **JONATHAN CARNEY**, is and was at all times mentioned herein a prisoner of the State of Connecticut, in the custody of the Connecticut Department of Correction. He is currently confined in MacDougall Correctional Institution, 1153 East Street South, Suffield, CT. 06080.

## III. DEFENDANTS

4. Defendant, **ANGEL QUIROS**, is and was at all times mentioned herein the Commissioner of the Connecticut Department of Correction, who's office is located at 24 Wolcott Hill Road, Wethersfield, Ct. 06109. Pursuant to the Connecticut General Statute §18-81, Defendant Quiros **SHALL** administer, coordinate and control the operations of the department of correction and shall be responsible for the overall supervision and direction of all institutions, facilities and activities of the department. He is responsible for establishing disciplinary, diagnostic, classification, treatment, vocational and academic education, research and statistics, training and development services and programs throughout the department.

5. Defendant, **COLLEEN GALLAGER**, is and was at all times mentioned herein the Defendant Connecticut Department of Correction's, Department Correctional Health Service Program Director and Americans with Disabilities Act (hereafter "**ADA**") Coordinator, who's office is located at 24 Wolcott Hill Road, Wethersfield, Ct. 06109.

6. Defendant, **DR. JANE PIERI**, is and was at all times mentioned herein a Supervising Psychologist for the Connecticut Department of Corrections. Who's office is located in MacDougall Correctional Institution, 1153 East Street South, Suffield, CT. 06080.

7. Defendant, **JANE WALSH**, is and was at all times mentioned herein the ADA Coordinator for the Connecticut Department of Correction. Who's office is located in MacDougall Correctional Institution, 1153 East Street South, Suffield, CT. 06080.

8. At all times mentioned herein, all Defendants were acting in the performance of their duties and within the scope of their employment by the Connecticut Department of Correction, and were acting under color of state law. Each Defendant is being sued jointly and severely, in their <u>individual</u> and <u>official</u> capacities.

### IV. STATEMENT OF FACTS

9. On or about July and August of 2001, the Plaintiff had consulted with a clinical psychologist named Dr. Suzanne M. Derry of Rocky Hill, Connecticut, who diagnosed the Plaintiff with Obsessive Compulsive Disorder (OCD), and Borderline Personality Disorder.

10. On or about 5-8-2002, the Plaintiff had again sought mental health intervention/treatment at PATH outpatient services in Portland, Connecticut, where he had consulted with a Licensed Clinical Social Worker (LCSW) named Jeff Jensen, who, during the Plaintiff's clinical intake evaluation had failed to complete a risk assessment

3

of the Plaintiff, and had failed to obtain the Plaintiff's mental health records from Dr. Derry. During this intake assessment, the Plaintiff had admitted to previously killing an ex-girlfriend's cat, and that he and his then current girlfriend had recently broken-up.

11. Approximately two (2) weeks following his consultation with Mr. Jensen, on or about 5-22-2002, while suffering a mental health crisis, the Plaintiff had killed his ex-girlfriend and was taken into custody and was initially housed at Hartford Correctional Center (HCC).[2]

12. On or about 5-24-2002, the Plaintiff was then transferred to the Department of Correction's primary mental health care facility, Garner Correctional Institution (GCI), where on or about 5-28-2002, he was given an initial psychiatric evaluation and diagnosed with Major Depression; reoccurring Adjustment Disorder, with mixed emotions.

13. On or about 6-11-2002, the Plaintiff's primary mental health provider Ms. Kristen Devoe, a Clinic Social Worker (CSW), had further diagnosed him with Borderline Personality Disorder, and had created a mental health treatment plan that **did not** include the appropriate/approved standard of care/treatment for borderline personality disorder, i.e. Dialectical Behavioral Therapy (DBT). (***Emphasis added***).

---

2  Mr. Jensen has subsequently moved to Arizona, where he had applied with the State's Board of Behavioral Health Examiners, for licensing as a Clinical Social Worker. On or about 5-21-2007, his status as a LCSW was approved, however, after an investigation; on or about 10-1-2008, the Board of Behavioral Health Examiners had opened a complaint #**2008-0031**, against Mr. Jensen citing his failure to properly complete a risk assessment on the Plaintiff, resulting in the tragic murder of his ex-girlfriend, which the Board had deemed was sufficiently serious to merit disciplinary action against Mr. Jensen. (***Emphasis added***).

14. On or about 6-18-2002 and again on 7-2-2002, the Plaintiff had undergone a full psychiatric evaluation by Dr. Donald R. Grayson, from Diplomate American Board of Psychiatry and Neurology, who diagnosed the Plaintiff with Major Depressive Disorder, recurrent, sever; Obsessive – Compulsive Disorder; Claustrophobia, chronic; and Borderline Personality Disorder.

15. Dr. Grayson had concluded that the Plaintiff's **significant chronic emotional illness** require intense long term psychotherapy and the continued long term use of psychopharmacological medications, in order to control his depression, anger, poor impulse control and possible underlying psychosis. (*Emphasis added*).

16. On or about 7-3-2002, the Plaintiff's primary mental health provider Kristen Devoe (CSW), at Garner C.I., had a brief discussion with the Plaintiff, to inform him of her intent to refer him to a *Dialectical Behavior Therapy (DBT)* and writing therapy groups, that were scheduled to begin sometime in the near future. On or about mid August of 2002, the Plaintiff had began attending a quasi – Dialectical Behavioral Therapy (DBT) skills training group facilitated by CSW Devoe, during which she had merely read from a book, and held a group discussion on what was read.

17. On or about 8-29-2002, the Plaintiff had undergone an additional psychiatric evaluation that was conducted by Dr. Andrew W. Meisler, a Clinical Psychologist, who had also concluded that the Plaintiff suffers from a serious mental illness, i.e. Dependent

Personality Disorder, Borderline Personality Disorder, and Personality Disorder DOS (e.g. Depressive Personality Disorder).

**18**. From 9-6-2002 through to 3-13-2003, the Plaintiff had regular discussions with CSW Devoe regarding his participation in her quasi – Dialectical Behavioral Therapy (DBT) skills training discussion group, and had expressed to her that "he felt that he wasn't learning any DBT skills, but would continue attending her group with the hope that it would help him cope and get better".

**19**. On or about 3-17-2003, the Plaintiff's primary mental health provider at Garner C.I., CSW Devoe, had updated his mental health treatment plan to include **for the first time** Dialectical Behavioral Therapy (DBT) skills training intervention. However, she had failed to document and outline what specific DBT skills training was being made available to the Plaintiff and/or what specific DBT skills that the Plaintiff needed to learn based upon his specific diagnosis/psychosis. (*Emphasis added*).

**20**. From 3-26-2003 through to 6-26-2003, the Plaintiff had regularly attended CSW Devoe's quasi – Dialectical Behavioral Therapy (DBT) weekly group. On or about 6-27-2003, the Plaintiff had experienced a serious mental health crisis and had attempted suicide by ingesting approximately 5000mg of Thorazine, and was transported to the emergency room at Danbury Hospital, where he was intubated, and remained in the hospital's CCU for observation. The Plaintiff was eventually extubated, and on or about

6-28-2003, was returned to Garner C.I., and placed on suicide observation in the facility's In-Patient Medical Unit (IPM).

21. From 7-8-2003 through to 10-9-2003, the Plaintiff was repeatedly placed on suicide observation status, due to his continued suicidal ideation, and despite attending CSW Devoe's weekly quasi – Dialectical Behavioral Therapy (DBT) group, the Plaintiff had expressed to CSW Devoe that he wasn't learning any DBT skills in her weekly group, and felt that he was getting worse.[3]

22. On or about 11-18-2003, the Plaintiff was admitted to the Whiting Forensic Division of Connecticut Valley Hospital, in accordance with Connecticut General Statute § 17a-566b, where he had received a (Neuro) Psychological Assessment, and diagnosis of Major Depression; Dysthymic Disorder; and Borderline Personality Disorder. Based upon this assessment/diagnosis, it was the opinion of Dr. Seant Hart, Clinical Psychologist, that the Plaintiff [was] to utilize [regular] psychotherapy effectively, and had recommended that the Plaintiff actively participate in any groups or activities offered [by] the Department of Correction, such as [the specialized] Dialectical Behavioral Therapy (DBT) group, etc.. (***Emphasis added***).

23. On or about 1-21-2004, the Plaintiff was returned to the custody of Garner C.I., where he was admitted to the In-Patient Medical (IPM) unit for evaluation and

---

3   Based on the observations of the Plaintiff during this time period subsequent to his suicide attempt, the mental health staff at Garner C.I., i.e. CSW Devoe, *et.al.*, had documented the Plaintiff's ongoing suicidal ideation, bouts of mumbling/talking to himself, hypomania, and delusional presentation, but failed to provide him with any mental health counseling and/or psychotherapy for his serious mental illness. (***Emphasis added***).

stabilization on medication; and was issued a mental health treatment plan by his primary mental health provider CSW S. Leake, and mental health manager APRN J. Molloy that included the use [of] Cognitive Behavioral Treatment (CBT), instead of the recommended specialized Dialectical Behavioral Therapy (DBT) group.

24. On or about 2-17-2004, the Plaintiff had met with CSW Hurst, and had inquired as to "why [he] wasn't being provided with the recommended [Dialectical Behavioral Therapy (DBT)] group", since his return from the Whiting Forensic Division of Connecticut Valley Hospital. CSW Hurst had documented the Plaintiff's concerns, and had informed the Plaintiff that he would convey them to his primary provider CSW Devoe. From 2-17-2004 through to 10-25-2004, the Plaintiff had made repeated complaints to his primary provider that he was **not being provided with the prescribed and recommended Dialectical Behavioral Therapy (DBT) group**.

25. On or about 10-25-2004, the Plaintiff was seen by another mental health provider CSW Roche, who along with CSW Nielsen, and Dr. Matthews, had authored a revised and vague mental health treatment plan, for the treatment of his specific serious mental health needs.

26. On or about 12-4-2004, the Plaintiff had met with another LCSW Luke Mihaylo, to discuss his participation in Anger Management and Stress Management groups, and Rational Behavioral Therapy. From 12-4-2004 through to 10-5-2005, the Plaintiff was seen briefly on numerous occasions, i.e. between five (5) and fifteen (15)

8

minutes, by various mental health staff members at Garner C.I., who document that he was adjusting to the daily schedule that he had created for himself.

27. On or about 10-5-2005, Dr. Matthews had purportedly refered the Plaintiff to a Dialectical Behavioral Therapy (DBT) group that **did not exist** at Garner C.I., but was rumored to tentatively begin in the new year 2006. From 11-12-2005 through to January 2006, the mental health staff at Garner C.I. had repeatedly documented in the Plaintiff mental health records [to] "follow-up on DBT group" [referral]. (*Emphasis added*).

28. On or about the beginning of February 2006, the Plaintiff had began attending a class that was named DBT group twice (2) a week, and had continued to do so until on or about the end of June 2006, when the alleged DBT group was terminated due to the loss of funding. (*Emphasis added*).

29. On or about 8-8-2006, the Plaintiff was arbitrarily transferred to MacDougall C.I., where he was informed by a mental health social worker that there was **not** a Dialectical Behavioral Therapy (DBT) group offered at MacDougall C.I., and that the mental health staff there **only** does medication management and monthly Social Worker follow-ups with inmates with documented mental health histories.

30. From 5-24-2002, to the filing of this complaint, the Plaintiff has been arbitrarily and systematically denied adequate mental health treatment, i.e. Dialectical Behavioral Therapy (DBT), and other recommended psychotherapy treatment, for his serious mental health disorder. (*Emphasis added*).

9

## V. EXHAUSTION OF ADMINISTRATIVE REMEDY

31. At all times relevant to the facts in this complaint, the Plaintiff had exhausted all available administrative remedies and was informed that he had exhausted the Defendant Connecticut Department of Correction's Administrative Remedies.

## VI. LEGAL CLAIMS

32. Plaintiff reallege and incorporate by reference paragraphs **1 – 31**.

### Claim – I

*Denial of Adequate Mental Health Treatment in violation of the Eighth Amendment 42 U.S.C. § 1983*

33. The Plaintiff was diagnosed with Borderline Personality Disorder (BPO), which has been shown by mental health professionals, to be a prevalent, disabling, and sometimes fatal disorder – requiring the highly specialized intensive treatment of Dialectical Behavioral Therapy (DBT) – an evidence-based form of psychotherapy, proven to be the most effective therapy for the long-term treatment of the complex/difficult symptomology of the Plaintiff's mental disorder. (*Emphasis added*).

34. However, with deliberate indifference to the Plaintiff's serious and chronic mental health needs, the above-named Defendants has systematically ignored the recommendations of multiple outside mental health professions, to treat the Plaintiff's mental disorder with Dialectical Behavioral Therapy (DBT), and has also repeatedly refused to provide the Plaintiff with adequate mental health treatment by a board-

certified Psychiatrist, who specializes in the treatment of Borderline Personality Disorder. (*Emphasis added*).

35. The Plaintiff has repeatedly requested to be provided with Dialectical Behavioral Therapy (DBT), and was arbitrarily and systematically denied this prescribed and recommended specialized therapeutic treatment for his serious mental health disorder, causing the Plaintiff to suffer a severe mental health crisis, resulting in a serious suicide attempt and hospitalization in an outside hospital.

### Claim – II

*Denial of Reasonable Accommodations in violation of
the Americans with Disabilities Act
42 U.S.C. § 12101, 12132-33*

36. The Plaintiff's well-documented severe mental impairment, is recognized by both the ADA and the mental health profession, as a disability requiring Reasonable Accommodations to adequately treat.

37. The Plaintiff had made repeated requests for reasonable accommodations in the benefits, services, programs, and activities of the Connecticut Department of Correction, that were arbitrarily denied, and continues to be denied participation in mental health benefits, services, programs, and activities, solely because of his disability. (*Emphasis added*).

## Claim – III

### *Denial of Reasonable Accommodations in violation of*
### *Section 504 of the Rehabilitation Act of 1973*
### *28 U.S.C. § 794*

**38.** The Plaintiff is a qualified individual with a mental health disability within the meaning of section 504 of the Rehabilitation Act, that requires specialized long-term rehabilitative psychotherapy.

**39.** The Plaintiff was and continues to be discriminated against and denied participation in, and denied the benefits of the services, programs, and activities of the Connecticut Department of Correction, which is a public entities receiving federal financial assistance.

### VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment granting the following:

**A. Issue a Declaratory Judgment stating that**:

1. The repeated failure of the Connecticut Department of Correction to provide the Plaintiff with adequate mental health treatment, is an egregious violation of the Plaintiff's rights under the **Eighth Amendment** of the United States Constitution, the Americans with Disabilities Act (**ADA**), and constitutes deliberate indifference to the Plaintiff's serious mental health needs.

**B. Issue an Injunctive order to Defendant Quiros and the Connecticut Department of Correction, and/or their agents to**:

1. Immediately provide the Plaintiff with the following:

   A) A non-time limited community standard of mental health care & therapy program for Borderline Personality Disorder, to include and not limited too;

        **1)** a certified therapist;
        **2)** designated space of therapy groups and individualized counseling;
        **3)** program specific materials;
        **4)** therapeutic groups and individual counseling, specifically:
            **i)** <u>Dialectical Behavioral Therapy (DBT)</u>:
                -1hr once weekly of individual counseling/therapy
                - 2hr once weekly of skills training & group therapy
            **ii)** <u>Transference Focused Psychotherapy (TFP)</u>
            **iii)** <u>Mentalization Based Therapy (MBT)</u>:
                -1hr once weekly of individual counseling/therapy
                -1hr once weekly of skills training & group therapy
            **vi)** <u>Systems Training for Emotional Predictability and Problem Solving (STEPPS)</u> program, to include:
                -a certified therapist
                -program materials

    **B)** Stress Reduction & General Health Treatment, to include and not limited too:
        **1)** <u>Permanent Single Cell Status</u> (for necessary stress reduction, to prevent the exacerbation of the symptoms of the Plaintiff's diagnosed BPD, and to create a permanent safe living space, for the prevention of the Plaintiff's physical & emotional degeneration);
        **2)** <u>Whole Foods Plant-Based Diet</u>;
        **3)** <u>Access to Extended Family Visits</u>, to enhance & support the familial support system;
        **4)** <u>Supportive Programming</u>:
            **i)** access to a Borderline Personality Disorder Support Group;
            **ii)** access to supplies for an Art Therapy Program;
            **iii)** access to supplies for a Game Therapy Program (including video games, board games, card games, RPG games, etc.;
            **iv)** access to equipment for a Music Therapy Program

**C. <u>Award Compensatory damages in the following amounts</u>**:

    1. Five Hundred Thousand  (**$500,000.00**) dollars jointly and severally against the above-named Defendants, in their official capacities, for their deliberately arbitrary and capricious failure to meet their state Statutory, Federal Constitutional and Federal Statutory duty, to provide the Plaintiff with adequate mental health care and treatment for his serious mental illness, in violation the Plaintiff's rights pursuant to the **Eighth Amendment, Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.*, 12132-33, and 28 Code of Federal Regulations Part-35,** *et. seq.*;

**D. Jury Demand:**

1. A **JURY TRIAL** on all issues triable by a Jury, pursuant to the Plaintiff's rights secured by the Seventh Amendment to the United States Constitution.

**E. Attorney's Fees:**

1. Award Counsel for the Plaintiff reasonable attorney's fees, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual. **See 42 U.S.C. §12205 and CFR §35.175.**

**F. Grant any additional relief the Court deems just, proper, and equitable:**

1. Direct the U.S. Marshall Services to serve all Defendants with a copy of this complaint;

2. Issue an order precluding any and all arbitrary moves out of the Plaintiff's current housing unit or transfers of the Plaintiff out of his current facility, during the litigation of this complaint.

Date:

　　　　　　　　　　　　　　　　　　　**Respectfully Submitted,**

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Jonathan Carney #300990
　　　　　　　　　　　　　　　　　　　MacDougall Correctional Institution
　　　　　　　　　　　　　　　　　　　1153 East Street South
　　　　　　　　　　　　　　　　　　　Suffield, CT. 06080

**VERIFICATION**

I, **JONATHAN CARNEY**, have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. Pursuant to **28 U.S.C. § 1746**, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Jonathan Carney #300990