UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JONATHAN CARNEY,<br>    *Plaintiff*, | :<br>: |
| v. | :<br>: Case No. 3:25-CV-174 (SVN)<br>: |
| ANGEL QUIROS, et al.,<br>    *Defendants.* | : June 13, 2025<br>: |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Jonathan Carney, a sentenced inmate[1] currently incarcerated at MacDougall-Walker Correctional Institution ("MWCI"), filed this action under 42 U.S.C. § 1983, claiming violations of the Eighth Amendment of the United States Constitution, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973. In this suit, Plaintiff names four Defendants: Angel Quiros, Commissioner of the Connecticut Department of Correction ("DOC"); Colleen Gallagher, Correctional Health Service Program Director and ADA Coordinator for the Connecticut DOC; Dr. Jane Pieri, Supervising Psychologist for the Connecticut DOC; and Jane Walsh, ADA Coordinator for the Connecticut DOC. Plaintiff sues Defendants in their individual and official capacities and seeks damages, a declaratory judgment, and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] According to the Department of Correction website, Plaintiff was sentenced on January 16, 2004, to serve a maximum of forty-two years. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=300990 (last visited June 13, 2025). The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

I.   **FACTUAL BACKGROUND**

The Court summarizes only those facts necessary to provide context for its initial review. The Court accepts the allegations in Plaintiff's complaint, ECF No. 1, as true for purposes of this initial review order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dating back to 2001, Plaintiff chronicles his mental health treatment both before and during his incarceration, including his diagnoses for "Dependent Personality Disorder, Borderline Personality Disorder, and Personality Disorder [Depressive Personality Disorder]," as well as Obsessive Compulsive Disorder. Compl., ECF No. 1, ¶¶ 9–30. These diagnoses, Plaintiff says, were the root of his violent mental health episodes, including one during which he murdered his ex-girlfriend. *Id.* ¶¶ 9–11.

While incarcerated and housed at Garner Correctional Institution ("Garner C.I."), Plaintiff participated in Dialectical Behavioral Therapy ("DBT"), which Plaintiff alleges is standard

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

treatment for borderline personality disorder and is part of his prescribed treatment plan. *Id.* ¶¶ 13, 19. Plaintiff felt, however, that the DBT program at that facility was inadequate. *Id.* ¶¶ 18–19, 21. That same year, Plaintiff attempted suicide and for some time thereafter remained on suicide watch at the facility. *Id.* ¶¶ 20–21.

In 2003, while still incarcerated at Garner C.I., Plaintiff was admitted for in-patient treatment at Whiting Forensic Division of the Connecticut Valley Hospital, "where he had received a (Neuro) Psychological Assessment, and diagnosis of Major Depression; Dysthymic Disorder; and Borderline Personality Disorder." *Id.* ¶ 22. In treatment, Plaintiff alleges a clinical psychologist opined that Plaintiff should "utilize [regular] psychotherapy effectively, and . . . actively participate in any groups or activities offered [by] the Department of Correction, such as [the specialized] Dialectical Behavioral Therapy (DBT) group." *Id.* (alterations in original) Upon his return to the facility, however, Plaintiff alleges he received a mental health treatment plan "that included the use [of] Cognitive Behavioral Treatment (CBT), instead of the recommended specialized Dialectical Behavioral Therapy (DBT) group." *Id.* ¶ 23 (alteration in original).

Plaintiff alleges that, from February 17, 2004, through October 25, 2004, while at Garner G.I., he "made repeated complaints to his primary provider that he was not being provided with the prescribed and recommended Dialectical Behavioral Therapy (DBT) group." *Id.* ¶ 24 (emphasis removed). He alleges that DBT did not exist at that facility until around 2006, at which point he began attending the group until it was terminated for insufficient funding. *Id.* ¶¶ 27–28.

In August 2006, Plaintiff was transferred to MWCI, where he alleges "he was informed by a mental health social worker that there was **not** a [DBT] group offered at [MWCI], and that the mental health staff there **only** does medication management and monthly Social Worker follow-ups with inmates with documented mental health histories." *Id.* ¶ 29 (emphases in original).

3

Plaintiff alleges that from May 24, 2002, until "the filing of this complaint, [he] has been arbitrarily and systematically denied adequate mental health treatment, i.e. Dialectical Behavioral Therapy (DBT), and other recommended psychotherapy treatment, for his serious mental health disorder." *Id.* ¶ 30. Plaintiff claims that he has "repeatedly requested" that the named Defendants provide him with DBT, as well as access to a board-certified psychiatrist who specializes in borderline personality disorder, but Defendants have either denied or ignored his requests. *Id.* ¶¶ 34–35.

Plaintiff seeks a declaratory judgment stating that Defendants' actions constitute an "egregious violation" of Plaintiff's Eighth Amendment and ADA rights, *id.* at 12, injunctive relief in the form of specified mental health treatments, *id.* at 12–13, and compensatory damages in the amount of $500,000, *id.* at 13.

## II. DISCUSSION

In light of those factual allegations, the Court considers whether Plaintiff has alleged any plausible claims of constitutional violation under 42 U.S.C. § 1983.

### A. Eighth Amendment Deliberate Indifference

Plaintiff alleges Defendants have acted with deliberate indifference in violation of the Eighth Amendment in denying him access to psychotherapy—namely, DBT—to address his mental health diagnoses.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, Plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *See Estelle*, 429 U.S. at 104–06. The prison official must have intended to deny or unreasonably delay access to necessary medical care or to wantonly inflict

unnecessary pain. *See id.* Deliberate indifference is a high bar: "[n]ot every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-CV-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation and internal quotation marks omitted).

A successful claim for deliberate indifference must satisfy both objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). The objective component requires Plaintiff to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). The Court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). If a plaintiff was completely deprived of medical care, courts "examine whether [his or her] medical condition is sufficiently serious." *Id.* On the other hand, if the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (alteration in original; quotation marks and citation omitted).

Whether a medical need is sufficiently serious depends on factors that include if "a reasonable doctor or patient would find [the condition] important and worthy of comment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

5

Under the subjective requirement of the deliberate indifference test, a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 280 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* Recklessness requires more than merely negligent conduct. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (ellipses in original).

Here, Plaintiff alleges broadly that Defendants have failed to provide him with access to DBT as recommended by his clinical psychologist. *See* ECF No. 1 ¶¶ 34–35. These allegations are best characterized as complete deprivations of a specific mental health treatment and, with that characterization, the Court's inquiry focuses on "whether [Plaintiff's] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280.

"Depending on their severity, psychiatric or psychological conditions can present serious medical needs in light of our contemporary standards." *Charles*, 925 F.3d at 86. In his complaint, Plaintiff describes his mental health history, including episodic violence towards others and himself. ECF No. 1, ¶¶ 9–11, 20–22. These allegations—although in some instances preceding the filing of the complaint by approximately twenty years—are sufficient at this early stage of the litigation to illustrate the seriousness of Plaintiff's diagnoses. Thus, Plaintiff has adequately alleged facts satisfying the objective component of the deliberate indifference test.

The subjective component of the deliberate indifference test focuses on the actions of Defendants. Here, Plaintiff alleges that Defendants have denied him access to DBT despite the recommendation of a clinical psychologist. ECF No. 1 ¶¶ 22, 34–35. Taking Plaintiff's allegations as true, Plaintiff has plausibly alleged that Defendants acted with deliberate indifference in denying him access to psychotherapy treatment. *See Farmer*, 511 U.S. at 835 (noting that the subjective element of deliberate indifference entails "more than mere negligence" and "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). Importantly here, a "deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005). Although Defendants, in denying Plaintiff access to DBT, did so ostensibly because MWCI does not offer that program, the Second Circuit has noted that strict compliance with Department of Correction policy can still amount to deliberate indifference where "there is no evidence suggesting that the defendants took any steps whatsoever to assure themselves that applying the [policy to the plaintiff] was, in fact, a medically justifiable course of action." *Id.* at 406.

Accordingly, Plaintiff has adequately alleged that Defendants exhibited deliberate indifference to Plaintiff's access to psychotherapy.

B. The ADA and Rehabilitation Act

Plaintiff also alleges that Defendants' conduct violated both the ADA and the Rehabilitation Act. ECF No. 1 ¶¶ 36–39.

To state a claim under the ADA, a plaintiff must allege that he is a qualified individual with a disability and that he was excluded from participation in or denied the benefits of services, programs, or activities because of his disability. *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d

Cir. 2003). The "mistreatment [must have been] motivated by either discriminatory animus or ill will due to disability." *Garcia v. Univ. of Conn. Health Ctr.*, No. 3:16-CV-852 (JCH), 2016 WL 5844463, at *2 (D. Conn. Sept. 29, 2016).

Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical or mental health treatment but do not allege that the inmate was treated differently because of his disability. *See, e.g.*, *Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing inmate's ADA claim based on inadequate medical care because the plaintiff did not include any non-conclusory allegations of discrimination based on disability and identified no program that he was unable to participate in or service he was denied because of his disability). Even assuming Plaintiff is disabled within the meaning of the Act, Plaintiff has not alleged that Defendants acted out of "either discriminatory animus or ill will due to disability." *Garcia*, 2016 WL 5844463, at *2. Accordingly, as currently pleaded, Plaintiff's ADA claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

In the same vein, Section 504 of the Rehabilitation Act of 1973 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

To establish a *prima facie* case under the Rehabilitation Act, Plaintiff must allege that (1) he is a qualified individual with a disability; (2) MWCI is an entity subject to the Act; and (3) he was denied the opportunity to participate in or benefit from MWCI services, programs, or activities or MWCI otherwise discriminated against him by reason of his disability. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

8

Here, too, even assuming that Plaintiff is disabled within the meaning of the Act, Plaintiff has not alleged that he was discriminated against by reason of his disability. Accordingly, as currently pleaded, Plaintiff's claim under the Rehabilitation Act will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

C. Relief Sought

Having determined that Plaintiff has alleged a plausible claim for relief under the Eighth Amendment, the Court now evaluates the relief that Plaintiff seeks from the named Defendants.

1. *Monetary Damages*

The Eleventh Amendment bars Plaintiff from suing state actors in their official capacities for monetary damages. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiff may only seek monetary damages from these Defendants in their individual capacities.

That said, a plaintiff seeking monetary damages from a defendant, including supervisory officials, must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (recognizing that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (quotation marks and citation omitted)); *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that "to hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Plaintiff has alleged no facts directly linking any named Defendant to the alleged deprivation of access to medical treatment. Without factual allegations that these Defendants were personally involved in that deprivation, Plaintiff may not sue these Defendants for monetary damages in their individual capacities. *See Tangreti*, 983 F.3d at 618–19.

Therefore, because Defendants, as state actors, are immune from suit for monetary damages in their official capacities, and because Plaintiff failed to allege facts suggesting that these Defendants had personal involvement so as to proceed against them in their individual capacities, Plaintiff may not seek monetary damages on these facts. In light of the liberal pleading standard afforded to *pro se* litigants, however, the Court will grant Plaintiff leave to amend his claim provided that Plaintiff can add allegations pertaining to the personal involvement of these Defendants.

2. *Injunctive and Declaratory Relief*

Unlike an individual capacity claim for monetary damages, claims for injunctive relief do not require that a defendant have personal involvement in the alleged constitutional violation. *See Smith v. Muccino*, 223 F. Supp. 2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity . . . ."). But injunctive relief may only proceed against a defendant if that defendant can remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, No. 3:19-CV-229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908), for the proposition that the "defendant official must have some connection with enforcement of allegedly unconstitutional act").

Assuming for present purposes that the alleged constitutional violation is ongoing, Commissioner Quiros, Program Director Gallagher, and Dr. Pieri may have the power to remedy the violation in that they have authority to provide Plaintiff with his sought-after medical care. *See, e.g.*, *Dooley v. Cook*, No. 3:20-CV-1329 (MPS), 2020 WL 6395576, at *11 (D. Conn. Nov. 2, 2020) (allowing a plaintiff's request for medical injunctive relief to proceed to service against DOC Interim Commissioner, warden, prison doctor, and medical supervisor). However, as

10

alleged, Coordinator Walsh as ADA Coordinator for the Connecticut DOC likely does not have authority to provide Plaintiff with the relief that he seeks, and therefore, absent amendment, Coordinator Walsh will be dismissed as a Defendant.

On these facts as presently pleaded, Plaintiff may proceed in his suit for injunctive and declaratory relief against Commissioner Quiros, Program Director Gallagher, and Dr. Pieri in their official capacities. Absent amendment, Plaintiff's claims against Coordinator Walsh in both her official and individual capacities and Plaintiff's claims against Commissioner Quiros, Program Director Gallagher, and Dr. Pieri in their individual capacities will be dismissed.

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on his Eighth Amendment claim against Commissioner Quiros, Program Director Gallagher, and Dr. Pieri in their official capacities, for injunctive and declaratory relief only. All other claims, including Plaintiff's ADA and Rehabilitation Act claims, and all claims against Coordinator Walsh, are DISMISSED without prejudice.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claim set forth above against the Defendants listed above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **July 14, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. After Plaintiff files this notice, the Court will begin the effort to serve process on these Defendants in their official capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an

amended complaint by **July 14, 2025**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **July 14, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**<u>Changes of Address</u>.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1 requires that Plaintiff **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 13th day of June, 2025.

                                                       /s/ Sarala V. Nagala
                                                      SARALA V. NAGALA
                                                      UNITED STATES DISTRICT JUDGE